959 A.2d 298

**Ronald J. SMOLOW, Individually and on Behalf of all Persons and Entities Similarly Situated, Appellant**

v.

**Barbara HAFER, Treasurer of the Commonwealth of Pennsylvania and Treasury Department of Commonwealth of Pennsylvania, Appellees.**

Supreme Court of Pennsylvania.

Argued March 5, 2008.

Decided Nov. 19, 2008.

Ann Marshall Caldwell, Esq., for Ronald J. Smolow.

Howard Greeley Hopkirk, Esq., Thomas W. Corbett, Esq., Office of the Attorney General, John G. Knorr, Esq., PA Office of Attorney General, for Barbara Hafer.

Before: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice BAER.[1]

Appellant, Ronald J. Smolow, challenges the Commonwealth Court's decision to dismiss his class action complaint against the State Treasurer and the Treasury Department (collectively, the "Department"), which asserted, *inter alia,* a challenge to the constitutionality of Pennsylvania's Disposition of Abandoned and Unclaimed Property Act, Act of December 9, 1982, P.L. 1057 § 5 (as amended 72 P.S. §§ 1301.1–1301.29) ("DAUPA"), and a claim for damages and attorney fees pursuant to 42 U.S.C. § 1983.[2] Smolow asserted that the Department committed a taking without just compensation when it denied his request for interest earned during the time the Common-

1. This case was reassigned to this author.

2. Section 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Howlett v. Rose,* 496 U.S. 356, 358, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). The rationale for bringing Section 1983 actions in state court was set forth by the United States Supreme Court in *Howlett:* "Federal law is enforceable in state courts ... because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature." *Id.* at 367, 110 S.Ct. 2430.

wealth held his property pursuant to DAUPA. After review, we affirm the Commonwealth Court's dismissal of Appellant's claims.

The facts as pled in Smolow's amended complaint are as follows: In August 2002, the Department took possession of 300 shares of common stock in Parker Drilling Company as abandoned and/or unclaimed property, pursuant to DAUPA. *See* 72 P.S. § 1301.6 (prescribing that certificates of stock are "presumed abandoned or unclaimed" if the owner has not claimed such property or corresponded in writing with the business association within five years of the prescribed date of delivery);[3] 72 P.S. § 1301.13 (establishing the mechanism by which unclaimed property is transferred to the Treasurer). The Department later sold this stock under authority provided in the statute, *see* 72 P.S. § 1301.17, for $586.47, and appropriated the money, earned interest, and other appreciation for public purposes, *see* 72 P.S. § 1301.18.[4]

After discovering this in August 2003, Smolow filed a claim with the Department asserting ownership of the stock and seeking recovery of its proceeds, which was granted; however, pursuant to its interpretation of the governing statute and the Department's policies and procedures, the Department paid no interest on the claim. *Accord* 72 P.S. § 1301.17(d) ("The State Treasurer shall be responsible to an owner only for the amount actually received by the State Treasurer upon the sale of any property...."). In January 2004, Smolow filed a claim requesting interest, estimated at $30, which the Department denied.

Smolow then filed his seven-count, class action civil-rights complaint, invoking the Commonwealth Court's jurisdiction under Section 1301.21 of DAUPA, which provides:

**3.** The statute was amended, effective July 1, 2002, to provide that property is presumed abandoned after five years, rather than the previous period of seven years.

**4.** DAUPA's mechanics are discussed at greater length in the Commonwealth Court's opinion. *See Smolow v. Hafer*, 867 A.2d 767, 768–69 & n. 2 (Pa.Cmwlth.2005).

Any person aggrieved by a decision of the State Treasurer or as to whose claim the State Treasurer has failed to act within ninety (90) days after the filing of the claim, may commence an action in the Commonwealth Court to establish his claim. The proceeding shall be brought within thirty (30) days after the decision of the State Treasurer or within one hundred twenty (120) days from the filing of the claim if the State Treasurer fails to act. The action shall be tried *de novo* without a jury.

72 P.S. § 1301.21. Smolow defined the class as "[a]ll persons and entities whose property was delivered to the defendants as unclaimed or abandoned property pursuant to the DAUPA, converted to cash, and returned to the owner without just compensation" within a six-year period prior to the filing of the class action lawsuit. Amended Complaint ¶ 22.

In the complaint, Smolow asserted that the Department was obliged to pay class members earned interest under Section 1301.15 of DAUPA, which provides, "When property is paid or delivered to the State Treasurer under this article, the owner is entitled to receive income or other increments actually received by the State Treasurer." 72 P.S. § 1301.15. Alternatively, Smolow contended that, to the extent that DAUPA does not require the payment of interest, the statute is unconstitutional under Article 1, Section 10 of the Pennsylvania Constitution,[5] as it fails to provide just compensation for the taking and use of private property for public purposes.[6] Smolow also

5. Article I, Section 10 represents Pennsylvania's analogue to the federal Takings Clause, reposited in the Fifth Amendment to the United States Constitution. It provides, *inter alia*, that "private property [shall not] be taken or applied to public use, without authority of law and without just compensation being first made or secured."

6. This Court has applied the federal constitutional takings jurisprudence embodied in the decisions of the United States Supreme Court when considering takings issues under the Pennsylvania Constitution. *See Machipongo Land and Coal Co., Inc. v. Commonwealth of Pennsylvania, Dep't of Env.*, 569 Pa. 3, 799 A.2d 751, 763 n. 7 (2002). Further, Smolow offers no arguments to distinguish between the Fifth Amendment's Takings Clause and the takings provision of Article I, Section 10. *See generally Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 895 (1991) (delineating the obligation of litigants seeking an analysis of the Pennsylvania Constitution independent of federal constitutional

asserted claims under the United States Constitution, but solely for purposes of preserving them for adjudication in a parallel action, which he commenced in federal court. *See Smolow v. Hafer*, 353 F.Supp.2d 561 (E.D.Pa.2005).[7]

Initially, the Department offered to pay Smolow's claim to resolve it. After this was refused, the Department filed preliminary objections, asserting that the class action complaint was erroneously brought in the Commonwealth Court's original jurisdiction when, in fact, it represented an appeal from the Department's denial of his claim for interest; the putative class action members failed to exhaust their administrative remedies, interposing a jurisdictional impediment; the Commonwealth Court lacked jurisdiction over the class in light of the subject matter of the litigation; and Smolow's claims failed as a matter of law by virtue of his failure to allege any taking of "net earnings" as a requisite element of a takings claim. The Department separately filed a suggestion of mootness, which was rejected via single-judge order.

In its published opinion supporting the granting of the preliminary objections and dismissal of the class action complaint with prejudice, the Commonwealth Court first agreed with Smolow's position that his action resided within the court's original, as opposed to appellate, jurisdiction. *Smolow v. Hafer*, 867 A.2d 767, 772 (Pa.Cmwlth.2005). In this regard, the court relied primarily on DAUPA's prescription that judicial review is to be pursued via the filing of "an action in the

doctrine to offer a textual, historical, multi-jurisdictional, and policy-based presentation which would support state departure from federal constitutional jurisprudence).

7. The federal litigation was initially stayed, *see id.;* the stay was ultimately lifted, *Smolow v. Hafer*, 2005 WL 1377849, No. 04–941, *slip op.,* (E.D.Pa.2005); summary judgment was granted against Smolow individually based on the conclusion that he suffered no net loss, *see Smolow v. Hafer*, 513 F.Supp.2d 418, 437 (E.D.Pa.2007); *see also, infra* at 304 n. 11; leave was granted to substitute new class representatives, *see Smolow*, 513 F.Supp.2d at 438; and summary judgment was entered against the class, *see Simon v. Wiessman*, No. 04–941, 2007 WL 2461707, at *8 (E.D.Pa.2007) ("[T]he Court conclude[d] that, whether or not the interest earned on plaintiffs' property exceeded the costs of handling the property and processing their claims, plaintiffs have not suffered a taking without just compensation.").

Commonwealth Court," which is to be tried *de novo* without a jury. *See id.* (citing 72 P.S. § 1301.21). The court also observed that this procedure is consistent with its mandate to hear claims against the Commonwealth within its original jurisdiction. *See id.* Thus, while noting that Smolow's pleading should have been styled as a petition for review under Chapter 15 of the Rules of Appellate Procedure, the court found no basis for dismissal relating to the form of the action. *See id.*

The Commonwealth Court then held that Smolow's cause of action should be dismissed as a matter of law. *See id.* at 774–76. In this respect, the court indicated that Smolow had been neglectful in abandoning his property, thus foreclosing the conclusion that the Commonwealth had engaged in any "taking" for purposes of Article 1, Section 10. *See id.* at 775. The court explained that its holding was consistent with federal constitutional law cases opining that the State is not required "to compensate the owner for the consequences of his own neglect." *Texaco v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). The court also observed that other states have come to similar conclusions under their abandoned property statutes: "It has been held that no unconstitutional taking occurs where a state exercises its right to take custody and control of abandoned property, as opposed to taking absolute title. *See In re Folding Carton Antitrust Litigation,* 744 F.2d 1252, 1255 (7th Cir.1984) (custodial escheat under federal statute raises no unconstitutional taking); [s]ee also *Fong v. Westly,* 117 Cal.App.4th 841, 12 Cal.Rptr.3d 76 (2004)." *Smolow,* 867 A.2d at 774–75. Additionally, the court determined that the Department's decision not to pay interest was consistent with DAUPA. *See id.* at 775–76 (citing 72 P.S. § 1301.17(d)).[8]

---

8. The Commonwealth Court also agreed with the Department that class certification would be inappropriate, because putative class members failed to comply with DAUPA's requirement of submitting claims to the Department. *See Smolow,* 867 A.2d at 773–74 (explaining that "the mechanism for an aggrieved person to challenge an action of the Treasurer under the Unclaimed Property Law is carefully set forth by the Legislature" [and] "may not be transferred to others by way of a class action."). Smolow did preserve this issue for review before this

Smolow filed an appeal as of right with this Court pursuant to 42 Pa.C.S. § 723 and Pa.R.A.P. 1101, granting direct appellate rights in matters commenced in the Commonwealth Court's original jurisdiction. Smolow challenges the dismissal of his individual claims as well as the denial of class certification. We will not address the class certification issues given our conclusion that his individual claims, upon which the class claims are based, lack merit.

■ Turning to his individual claims, Smolow contends that the concept of just compensation under Article 1, Section 10 requires not only the return of the principal property, but also interest, earnings, or other accruals on the property while held in the state's custody subject to utilization for public purposes.[9] Smolow, therefore, claims that the withholding of the interest constitutes a taking requiring just compensation.

Smolow asserts his individual claim relying on the maxim that interest follows principal, averring that, by analogy, an owner holds title to both the abandoned property and the interest earned. Smolow relies upon the federal constitutional decisions exemplified by *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) (holding that interpleader funds deposited with a court clerk are subject to the "interest follows principal" rule),

Court. Nevertheless, as noted in the body of this opinion, we find it unnecessary to discuss the class certification issue. The Commonwealth Court additionally rejected Smolow's contention that Section 1301.15 of DAUPA requires payment of interest on property while in the Department's custody and control. *See Smolow,* 867 A.2d at 775–76. In this appeal, Smolow does not challenge the Commonwealth Court's conclusion in this regard.

9. We acknowledge that the Commonwealth Court incorrectly framed Smolow's argument as contending that the Commonwealth committed a compensable taking upon initial receipt of Smolow's stock. Smolow notes that no compensable taking could occur at the time the Department received the principal because at that point the Department was not claiming ownership but was merely holding the principal in perpetuity until claimed by the owner. Instead, Smolow maintains that a compensable taking occurred when the Department gave the principal back but retained the interest. Accordingly, the moment when the Department returned the principal (over which it never claimed ownership) but retained the interest (thus asserting ownership) is the only time Appellant asserts that a compensable taking occurred.

*Phillips v. Washington Legal Foundation,* 524 U.S. 156, 171, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (same for client funds deposited with attorneys in small amounts and/or for short periods pursuant to Interest on Lawyer's Trust Account programs), and *Brown v. Legal Foundation of Washington,* 538 U.S. 216, 235, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003) (same).[10] According to Smolow, several courts in other states addressing the "taking" issue in the context of unclaimed property laws similar to DAUPA have recognized that a taking occurs when the state retains interest on abandoned property upon return of that property to its owners. *See* Brief for Appellant at 28–29 (citing *Canel v. Topinka,* 212 Ill.2d 311, 288 Ill.Dec. 623, 818 N.E.2d 311 (2004), and *Arthur v. District of Columbia,* 857 A.2d 473 (D.C.App.2004)). He distinguishes his case from the United States Supreme Court's decision in *Texaco* based on his observations that the state in *Texaco* never claimed ownership of any of the property, because ownership was merely transferred from the subsurface owner, who abandoned the property, to the surface owner. In contrast, he argues that under DAUPA the owner retains ownership interests over the property while it is merely in the temporary custody of the state.

The Department's brief follows the Commonwealth Court's reasoning, emphasizing the High Court's admonition in *Texaco* that, where the owner's failure to make any use of the property, and not the actions of the state, causes the lapse of a property right, there is no taking. *See Texaco,* 454 U.S. at 530, 102 S.Ct. 781. The Department also asserts that there is no allegation in the amended complaint that Smolow's claimed interest exceeds the cost incurred by the Treasurer in administering the funds and processing his claim. According to the Department, Smolow's claim should fail on this basis as well.

---

10. *Brown,* however, also stands for a second proposition that is arguably fatal to Smolow's claim, "that the 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain." *Brown,* 538 U.S. at 235–236, 123 S.Ct. 1406. As discussed *infra,* at 304 n. 11 and 304 n. 12, there are substantial questions whether Smolow can assert any net loss in this case.

We reject Smolow's argument because it strains common sense to suggest that the Commonwealth is obligated to pay interest to a negligent owner, who has presumably ignored his property for several years. The conceit present in Smolow's theory is that the negligent owner is entitled to interest despite the lack of an indication that the interest would have been earned by the negligent owner if he had possession of the property during the relevant time. For example, if the property had been an abandoned suitcase of cash, why should the owner receive interest earned through the DAUPA system, when that cash would not have earned any interest sitting in the suitcase?

Indeed, Plaintiff's claim has already been rejected in substance by the United States Supreme Court. As noted, in *Texaco*, the Court concluded that an owner was not entitled to compensation when he lost property rights based upon his own negligence in failing to make use of his property, rather than through any action of the state. *Id.* ("[T]his Court has never required the [s]tate to compensate the owner for the consequences of his own neglect."). As noted by Smolow, however, *Texaco* can be distinguished from the DAUPA situation because the state never obtained control over the property in *Texaco*, but instead merely caused the title of the property to pass from the subsurface owner who abandoned the property, to the surface owner.

A Louisiana appellate court, however, looked to the holding in *Texaco*, premised on the owner's negligence, and applied it to contrast eminent domain cases with litigation under abandoned property statutes, similar to DAUPA. The court observed, "[t]he triggering event in the exercise of the state's power of eminent domain is *the state's overt act* of taking private property from an owner," *Hooks v. Treasurer*, 961 So.2d 425, 432 (La.Ct.App.2007) (emphasis added). In contrast, under an unclaimed property statute, the triggering event is "the *owner's act of abandonment* over a period of several years." *Id.* (emphasis added). Given this distinction, the court refused to find that the unclaimed property statute worked a taking requiring compensation:

We can find no bar to this statutory scheme. When the state receives custody, it is also required to assume, in apparent perpetuity, the responsibility of safekeeping the property for any owners who may wish to re-claim their abandoned property. In return for this advantageous long-term reclaiming service, the state is afforded the benefit of retaining, after any deductions required by law, the interest earned from post-abandonment actions of the state.

*Id.* The Louisiana court opined that the statutory duty to maintain a system for safekeeping the abandoned property "cannot logically or fairly be stretched to create a higher fiduciary duty to pay interest not earned by any action of an owner who abandoned not only his property and investment opportunities, but also the responsibility to maintain and care for the property." *Id.*

Similarly, the United States District Court for the Eastern District of Pennsylvania, in reviewing a successor plaintiff to Smolow[11] in ongoing parallel federal litigation, reached a similar conclusion after reviewing in detail the decisions of *Hooks* and other courts that have also declined to provide interest to the owners of abandoned property subject to unclaimed property statutes. *Simon v. Wiessman,* 2007 WL 2461707, *5–7 (E.D.Pa., Aug.27, 2007) (discussing *Smyth v. Carter,* 845 N.E.2d 219 (Ind.Ct.App.2006), *review denied,* 860 N.E.2d 588 (Ind.2006), *cert. denied,* 549 U.S. 1181, 127 S.Ct. 1155, 166 L.Ed.2d 996 (2007); *Clark v. Strayhorn,* 184 S.W.3d 906 (Tex.App.2006), *cert. denied,* 549 U.S. 995, 127 S.Ct. 508, 166 L.Ed.2d 369 (2006); *Sogg v. Ohio Dept. of Commerce,* 2007 WL 1821306 (Ohio Ct.App.2007)).

In contrast, a few courts have concluded that a taking occurs when interest is retained under statutes similar to

11. The federal district court dismissed Smolow as the named-plaintiff in his parallel federal action after determining that Smolow could not claim any net loss justifying compensation, even if the court determined that a taking had occurred. After considering expert testimony presented by both sides, the federal court concluded that the $170.48 in costs of managing Smolow's presumptively abandoned property far exceeded the interest earned, even taking Smolow's interest figure, which exceeded the Commonwealth's interest figure. *Smolow,* 513 F.Supp.2d at 435; *see also, supra,* at 300 n. 7.

DAUPA. *See Suever v. Connell,* 2007 WL 3010423, *7 (N.D.Cal.2007) ("Because the principal itself at all times remained the property of private individuals and not the state, so too did the interest."); *Canel v. Topinka,* 212 Ill.2d 311, 288 Ill.Dec. 623, 818 N.E.2d 311 (2004) (finding that dividends held under unclaimed property laws are private property that cannot be taken without just compensation). The reasoning in these decisions, however, fails to account for the owner's responsibility to maintain his property or to analyze the question in light of the analogous observations in *Texaco.*

■ After review, we fully agree with the decisions of our sister courts, including the Eastern District of Pennsylvania looking at this case, that owners of presumptively abandoned property have no claim to the interest earned while the abandoned property is held in perpetual temporary custody of the state. The DAUPA procedures result not from a taking by overt act of the Commonwealth, but are triggered by the neglect of the owner. *See Texaco,* 454 U.S. at 530, 102 S.Ct. 781 ("It is the owner's failure to make any use of the property-and not the action of the State-that causes the lapse of the property right; there is no 'taking' that requires compensation."). Accordingly, we affirm the Commonwealth Court's dismissal of Smolow's complaint.[12]

As the claims of the putative class would fail for the same reasons that Smolow's individual constitutional takings challenge to the statute fails, we do not reach the questions of class certification, but instead affirm the dismissal of the class for the reasons stated above.

12. Moreover, even if Smolow had stated a claim, it would have been a waste of judicial resources to remand this case for development of the record to determine if he had suffered the net loss required to justify compensation. *See Brown,* 538 U.S. at 235–236, 123 S.Ct. 1406 ("[T]he 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain."). Logic dictates that even an extremely efficient government unclaimed property system would have costs per individual claim that would far exceed the approximately thirty dollars of interest in this case. As Smolow can claim no net loss, no compensation is justified in this case.

Chief Justice CASTILLE, Justice EAKIN, Justice TODD and Justice McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

As the majority observes, other courts are divided on the subject matter of this appeal, namely, whether a state implementing a scheme of custodial escheat for unclaimed property may appropriate interest earned on reclaimed funds. *Compare Suever v. Connell,* No. C 03–00156 RS, *slip op.,* 2007 WL 3010423, at \*7 (N.D.Cal. Oct.12, 2007), *with Simon v. Wiessman,* No. 04–941, 2007 WL 2461707, at \*8 (E.D.Pa.2007). The majority, however, makes relatively short work of the question. Notably, although its analysis rests integrally upon a concept of presumed negligence on the part of property owners subject to the operation of the custodial escheat statute, *see* Majority Opinion, *op.* at 566, 959 A.2d at 301, the majority does not pause to discuss the justification for such a presumption or the availability (or non-availability) of due process protections available under the statute to those subject to its operation who are not, in fact, negligent. *Cf. Suever v. Connell,* No. C 03–00156 RS, *slip op.,* 2007 WL 3313954, at \*1 (N.D.Cal.2007) ("Having unequivocally declared that it is holding the property on behalf of its true owner, the state cannot thereafter constitutionally refuse to return interest that is, under long established common law principles, part of that property, at least without a clearly delineated statutory scheme that, with adequate due process protections, justifies permanent escheat of the interest." (emphasis deleted)).[1]

Although I do not necessarily disagree with the majority's decision on the merits to the extent that it is read as rejecting only a facial (as opposed to as-applied) constitutional attack on the statute as implemented by the Department, left to my own devices, I would not reach the merits of Appellant's arguments

1. The majority's suitcase-of-cash example can be contrasted with a continuum of other situations in which an owner may not have the present ability to monitor his or her property, such as circumstances of medical incapacity or inheritance of unknown assets.

at this juncture. Rather, I believe the Commonwealth Court should have considered the general principle that courts will not address debatable constitutional challenges where there is an alternate basis for disposition. *See Commonwealth v. Hughes*, 581 Pa. 274, 312 n. 24, 865 A.2d 761, 783 n. 24 (2004) (collecting cases).[2] Had it applied this principle, the court would have deferred decision on Smolow's constitutional claim pending consideration of whether the Commonwealth's expenses in the administration of his property and claim were equal to or exceeded his interest claim. This matter has been raised by the Department and is an issue Smolow agrees could be dispositive. *See* Brief for Appellant at 33. Moreover, it is noteworthy that the federal district court presiding over the federal claims asserted by Smolow considered the net-loss question as a threshold one, rejecting Smolow's individual claims on the basis that he suffered no net loss prior to consideration of the constitutional challenge maintained by substitute named plaintiffs. *See Smolow v. Hafer*, 513 F.Supp.2d 418, 437 (E.D.Pa.2007). Indeed, the majority finds it obvious that Smolow could not have suffered a loss, albeit as an alternative basis for its disposition, set forth in a closing footnote. *See* Majority Opinion, *op.* at 571 n. 12, 959 A.2d at 304 n. 12.

In summary, I believe that the most prudential approach to this appeal would be to enforce the application of the settled approach of screening for grounds for resolution alternative to addressing a debatable constitutional claim, particularly since this would clarify whether the decision on the constitutional question is in any way meaningful to the party in interest. Notably, again, the majority ultimately concludes that its own decision simply is not. *See id.*

**2.** It occurs to me that the consistent application of this prudential sort of approach to the review is particularly preferable in cases reaching this Court via direct appeal, as it ensures that appeals as of right are appropriately framed and developed for the appellate review. Notably, in the direct-review matters, this Court does not have the ability to pre-screen the cases based upon suitability considerations, as it does on the discretionary review docket.