DAVID CWIK, Successor Independent Adm'r of the Estate of Genowefa Bogdanowicz, *et al.*, Plaintiffs-Appellees, v. JUDY BARR TOPINKA, Treasurer, *et al.*, Defendants-Appellants.

First District (1st Division) Nos. 1—07—2368, 1—07—2786 cons.

Opinion filed March 9, 2009.

Lisa Madigan, Attorney General, of Chicago (Steven M. Puiszis and Robert T. Shannon, both of Hinshaw & Culbertson LLP, Special Assistant Attorneys General, of counsel), for appellants.

William J. Harte and Walter Piecewicz, both of William J. Harte Ltd., Arthur T. Susman, Matthew T. Hurst, and Glenn L. Hara, all of Susman Heffner & Hurst LLP, and John R. Wylie and Charles R. Watkins, both of Futterman Howard Watkins & Ashley, Chtrd., all of Chicago, for appellees.

JUSTICE HALL delivered the opinion of the court:

The plaintiffs, David Cwik, successor independent administrator of the estate of Genowefa Bodganowicz, and Anita White, filed a lawsuit against the defendants, Judy Barr Topinka,[1] Treasurer of the State of Illinois, and Alissa Camp,[2] Director of the Unclaimed Property Division of the office of the Illinois Treasurer (collectively the Treasurer), on behalf of themselves and all others similarly situated, seeking payment of interest on property previously held by the State of Illinois under the Uniform Disposition of Unclaimed Property Act (765 ILCS 1025 *et seq.* (West 2004)) (the Act). The plaintiffs also sought certification of the suit as a class action.

The circuit court denied the Treasurer's motion to dismiss the amended complaint but certified two questions to this court pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). Pursuant to Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)), the Treasurer also sought review of the order certifying the class. This court granted review in both instances and consolidated the appeals.

Under the Act, private property in the possession of someone other than its owner is presumed abandoned and must be placed in the custody of the State. 765 ILCS 1025/11 (West 2004). The State as-

---

[1]Alexi Giannoulias succeeded Judy Barr Topinka as Treasurer.

[2]Joshua Joyce succeeded Alissa Camp as Director of the Unclaimed Property Division.

sumes custody of the property and is responsible for its safekeeping. 765 ILCS 1025/14 (West 2004). Upon submission of the state-prescribed form, the owner may retrieve the property. 765 ILCS 1025/19 (West 2004). However, pursuant to section 15 of the Act, the owner "is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner." 765 ILCS 1025/15 (West 2004).

The provisions of the Deposit of Monies Act requires the Treasurer to deposit all money received "on account of the State" in "banks, savings and loan associations or credit unions" that were authorized to receive such deposits under that statute. 15 ILCS 520/1 (West 2004). Any interest received "shall be the property of the State of Illinois." 15 ILCS 520/2 (West 2004). Proceeds received from the sale of property pursuant to the Act are placed in one of two funds: (1) the unclaimed property fund, from which claims under the Act are paid; and (2) the pension fund. 765 ILCS 1025/18(a) (West 2004).

The complaint alleged that section 15 of the Act constitutes a taking without compensation in violation of section 15 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §15), the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV) and 42 U.S.C. §1983 (1994). Specifically, the plaintiffs alleged that money, stock and dividends had been deposited with the Treasurer in accordance with the Act. The Treasurer returned the principal sums but not the interest or other earnings that had accrued on the principal amounts. A motion for class certification was also filed.

The Treasurer's motion to dismiss the complaint was granted. The circuit court granted the plaintiffs leave to file an amended complaint, commenting that "[m]aybe if you can plead you suffered a loss, not merely that the State has received a gain, but that you have suffered a loss, then you're in." The plaintiffs' amended complaint contained the following allegation:

"Net earnings accrued on Plaintiffs' and the Class' property while in the custody of the State and Defendants' retention of those net earnings represents a loss to Plaintiffs and the Class for which just compensation is due."

The Treasurer filed a motion to dismiss the amended complaint. The circuit court found that the plaintiffs had adequately pleaded that they suffered a loss and denied the Treasurer's motion to dismiss. However, pursuant to Rule 308, the court certified the following questions:

"Whether the retention for state purposes of the interest earned

on property held pursuant to the Illinois Uniform Disposition of Unclaimed Property Act during the time it was in the possession of the State Treasurer's Office and/or the State's Retirement Systems is a taking for which just compensation is due under the Fifth and Fourteenth Amendments to the United States Constitution or Article II, §15, of the Illinois Constitution[.]

If so, whether just compensation should be measured by the interest earned by the State on the property taken[.]"

While initially denying class certification, on reconsideration, the circuit court certified the class. The class was defined as:

"All persons or entities whose property has been taken into custody by the State of Illinois pursuant to the Illinois Uniform Disposition of Unclaimed Property Act (or its predecessor acts) and which has earned or will earn interest or other accruals (other than dividends) while in the custody of the State, which interest or other accruals have been or will be used for the purposes of funding state programs and operations without compensation being paid to the person or entity whose property was or will be used to earn such interest or accruals."

The Treasurer filed a petition for leave to appeal from the order granting certification of the class pursuant to Rule 306(a)(8). This court granted leave to appeal in both instances and granted the Treasurer's motion to consolidate the two appeals.

## ANALYSIS

### I. Rule 308 Certified Questions

#### A. *Standards of Review*

The court's review of a certified question is *de novo. Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58, 879 N.E.2d 910 (2007) (a certified question must be a question of law). The constitutionality of a statute is reviewed *de novo. Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146, 787 N.E.2d 786 (2003). The party challenging the statute carries the burden of rebutting that presumption and " 'clearly establishing' its unconstitutionality. [Citation.]" *Arangold*, 204 Ill. 2d at 146. This court has a duty to uphold the constitutionality of a statute whenever reasonably possible. *Arangold*, 204 Ill. 2d at 146.

Review is limited to the question certified by the circuit court. *Barbara's Sales, Inc.*, 227 Ill. 2d at 57-58. However, a court may go beyond the limits of a certified question in the interests of judicial economy. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 472, 693 N.E.2d 358 (1998); see also *Arriola v. Time Insurance Co.*, 323 Ill. App. 3d 138, 142, 751 N.E.2d 221 (2001) (court may also consider the appropriateness of the order giving rise to the appeal). With these principles in mind, we turn to the first certified question.

B. *Does the Retention of Earned Interest Constitute a Taking in Violation of the State and Federal Constitutions?*

The Treasurer asserts that the plaintiffs are not entitled to the interest earned on their unclaimed property because (1) they have no property right in the interest, (2) their property was abandoned, and (3) the State is not required to compensate owners of property where the property was not earning interest at the time it was abandoned.

### 1. Property Right to Interest

As our supreme court noted in *Canel*, " '[b]ecause the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to "existing rules or understandings that stem from an independent source such as state law." ' " *Canel v. Topinka*, 212 Ill. 2d 311, 332, 818 N.E.2d 311 (2004), quoting *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 141 L. Ed. 2d 174, 183, 118 S. Ct. 1925, 1930 (1998), quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972). In Illinois, interest is not recoverable absent a statute or agreement providing for it. *City of Springfield v. Allphin*, 82 Ill. 2d 571, 576, 413 N.E.2d 394 (1980); see *Shields v. State Employees Retirement System*, 363 Ill. App. 3d 999, 1005-06, 844 N.E.2d 438 (2006) (the plaintiff was not entitled to interest on a judgment involving a state pension contribution where the enabling statute specifically provided that interest not be paid). Moreover, the State is not obligated to pay interest on funds in its possession. See *Allphin*, 82 Ill. 2d at 578 (when the legislature intends to impose liability on the State for interest, it affirmatively declares that the burden will fall on the sovereign).

The plaintiffs respond that they are not seeking to require the State to pay interest; rather, they are seeking the interest the State actually earned on their property. See *Village of Pawnee v. Johnson*, 103 Ill. 2d 411, 418, 469 N.E.2d 1365 (1984) (municipalities sought reimbursement for wrongfully withheld interest, not prejudgment interest, distinguishing *Allphin*).

In *Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 449 N.E.2d 65 (1983), the plaintiff sought to recover interest earned on tax monies paid under protest. An injunction was granted prohibiting the defendant from depositing any of the funds into the state treasury. In determining that the plaintiff was entitled to the interest earned by the investment of the protest funds, the court distinguished *Lakefront Realty Corp. v. Lorenz*, 19 Ill. 2d 415, 167 N.E.2d 236 (1960), as follows:

"The circumstances here differ from those in *Lakefront Realty* in

that interest income was actually earned on the protest funds. Payment of the interest income to the successful taxpayer does not present the problem in *Lakefront Realty*, where no money was available to pay interest on the fund. The case here is not one in which the taxpayer is requesting interest on the protest fund as a matter of course. The taxpayer is simply seeking the income earned from money it was determined it had no legal duty to pay as taxes. The interest income, as it accrued, belonged neither to the State nor to the county for whose benefit the taxes were collected. The Treasurer's authority, as trustee, to invest these funds did not affect the ownership of the funds or entitle him to keep the interest so earned." *Shell Oil Co.*, 95 Ill. 2d at 547.

See also *Morton Grove Park District v. National Bank & Trust Co.*, 78 Ill. 2d 353, 399 N.E.2d 1295 (1980) (denial to property owners of interest accrued on condemnation awards they were obligated to deposit if they wished to appeal the award was a constitutional violation).

To determine whether the payment of the accrued interest would constitute an impermissible money judgment against the State, it is necessary to examine the source from which the interest would be paid. *Shell Oil Co.*, 95 Ill. 2d at 548. The court noted that in *Campbell v. Department of Public Aid*, 61 Ill. 2d 1, 329 N.E.2d 225 (1975), it reversed an order requiring the Department to make retroactive aid payments; because the appropriations from which the payments would have been made had lapsed, the order constituted a monetary judgment against the state which was prohibited. *Shell Oil Co.*, 95 Ill. 2d at 548.

In contrast, in *Shell Oil Co.*, the court determined that the payment of interest would not constitute a money judgment, explaining as follows:

"The record here, however, discloses that the interest income earned by the Treasurer is available to pay the taxpayer. An award of the interest income will not result in a money judgment against the State, since the Treasurer will pay the interest generated in his capacity as a trustee. Too, the ultimate source of the interest income is the bank or other entity with which the fund was invested." *Shell Oil Co.*, 95 Ill. 2d at 548.

Noting that the interest income never belonged to the State, the court held that "[t]he Treasurer could not deny the taxpayer the right to that income by transferring it to the State's general revenue fund." *Shell Oil Co.*, 95 Ill. 2d at 548.

Likewise, in *Waukegan Community Unit School District No. 60 v. City of Waukegan*, 95 Ill. 2d 244, 447 N.E.2d 345 (1983), the supreme court held that, presuming interest had been earned on a protest fund, the interest was recoverable as an incident of the protest fund

itself. *Waukegan Community Unit School District No. 60*, 95 Ill. 2d at 261. The court noted that where no protest fund had been established, the "consumers are therefore not entitled to an interest award since no interest has been generated by a special protest fund." *Waukegan Community Unit School District No. 60*, 95 Ill. 2d at 261-62.

In *Village of Pawnee*, municipalities sought reimbursement of interest income that had accrued on tax receipts collected, invested and distributed by the Department of Revenue pursuant to statute. The supreme court held that the municipalities were entitled to the interest income which had been segregated from the general fund, but they could not recover funds which had already been placed in the general revenue fund because it would amount to an impermissible judgment against the State. *Village of Pawnee*, 103 Ill. 2d at 422.

The Treasurer maintains that, as in *Village of Pawnee*, the plaintiffs may not recover the interest income because the interest income has already been placed in the state pension fund and the unclaimed property fund and that any order to refund the interest would amount to an impermissible judgment against the State.

In this case, the interest was earned on the unclaimed property because the Treasurer was required to deposit the money in an authorized bank, savings and loan association or credit union. Therefore, the payment would not be a money judgment against the State because the source of the interest monies would be the institution where the funds were invested. See *Shell Oil Co.*, 95 Ill. 2d at 548.

## 2. Unclaimed Property Under the Act Is Abandoned

The Treasurer points out that the Act authorized him to sell, loan or even destroy the property under certain circumstances. See 765 ILCS 1025/17 (West 2004). The Treasurer maintains that such control of unclaimed property further supports his argument that the plaintiffs did not have any protectable interest in the property.

That reasoning was rejected by the supreme court in *Canel*. Although *Canel* involved the retention of dividends, the court's reasoning is relevant as applied to the retention of an interest in the property by the owner. In *Canel*, the Treasurer asserted that owners who abandon property no longer retain a property interest in the income accruing on the abandoned property once the property is transferred to the State and as a result no taking occurs. Rejecting that argument, the court observed:

> "We know of no common law rule which supports defendants' position that, by virtue of plaintiff's presumed abandonment of his property, the dividends declared as an incident of ownership of the

property become the property of the state." *Canel*, 212 Ill. 2d at 331.

Noting that the common law doctrines of escheat and *bona vacantia*, which historically had been used to transform private property to state property, did not apply in this case, the court continued as follows:

"We reject the notion that the state, as custodian of stock placed in its hands for safekeeping, may claim that it is entitled to the dividends issued on the stock. [Citation.] At all times the shares of stock remained the private property of plaintiff. Under the circumstances, the dividends, as an incident of ownership, were also private property." *Canel*, 212 Ill. 2d at 331.

As *Canel* makes clear, property remitted to the State under the Act is "presumptively abandoned" not "abandoned," and the State acts as a property's custodian, not its owner. Therefore, the Treasurer's argument that the abandonment of the property by the owner entitles it to the interest generated after it is remitted to the State lacks merit.

### 3. Unclaimed Property Was Not Earning Interest

The Treasurer maintains that the circuit court erred when it relied on the doctrine that "interest follows principal." The Treasurer argues that the above principle does not apply where the owner's neglect of the property led to its placement in state custody. Therefore, the State is entitled to earn and retain the interest on the property. The Treasurer further maintains that the decision in *Canel* is inapplicable because the analysis undertaken in *Canel* did not address the decision in *Texaco, Inc. v. Short*, 454 U.S. 516, 70 L. Ed. 2d 738, 102 S. Ct. 781 (1982).

Under the statute at issue in *Texaco*, a mineral lease that went unused for 20 years automatically lapsed unless the owner filed a statement of claim. While the lower court ruled the statute unconstitutional, the Indiana Supreme Court reversed, finding, *inter alia*, that the statute did not constitute a taking for which just compensation was due. The United States Supreme Court affirmed.

In determining that the statute did not constitute a "taking," the Court stated as follows:

"In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment,

the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a 'taking.' " *Texaco*, 454 U.S. at 530, 70 L. Ed. 2d at 751-52, 102 S. Ct. at 792-93.

The Treasurer points to numerous decisions from other jurisdictions finding *Texaco* controlling on the issue of whether property taken under an unclaimed property statute due to the owner's neglect constitutes a "taking." One of the most recent cases is *Smolow v. Hafer*, 598 Pa. 561, 959 A.2d 298 (2008).[3]

In *Smolow*, the plaintiff challenged the denial of his request for interest earned on property held by the Commonwealth of Pennsylvania under its unclaimed property statute. In accordance with the statute, the Treasurer took possession of the plaintiff's stock, sold it and appropriated the money. Thereafter, interest was earned on the money. After filing a claim, the plaintiff recovered the proceeds of the stock sale but not the interest. In support of his claim to the interest generated by the stock, the plaintiff cited *Canel*; the Treasurer relied on *Texaco*.

The Pennsylvania Supreme Court agreed with the Treasurer that *Texaco* was controlling. The court noted that the proceedings under the unclaimed property statute resulted from the owner's neglect of the property and, therefore, such owners had no claim to the interest earned while the property was in the "perpetual temporary custody of the state." *Smolow*, 598 Pa. at 571, 959 A.2d at 304. The court noted that in *Canel*, the Illinois Supreme Court held that dividends held under unclaimed property laws were private property that could not be taken without just compensation. However, the court maintained that *Canel* failed to account for the owner's responsibility to maintain his property or to analyze the question in light of analogous observations in *Texaco*. *Smolow*, 598 Pa. at 571, 959 A.2d at 304.

### C. *Certified Questions Answered*

The majority of cases ruling on the issue have determined that the retention of earned interest by a state under an unclaimed property statute is not a "taking" requiring the payment of compensation.[4] These cases have cited the decision in *Texaco*.

---

[3]*Smolow* was decided after the briefs were filed in this case. This court granted the Treasurer leave to file the decision as additional authority.

[4]See *Rowlette v. State*, 188 N.C. App. 712, 656 S.E.2d 619 (2008); *Hooks v.*

Initially, we note that the decision in *Texaco* is distinguishable as it was premised on the fact that the property was abandoned, and as a result, the owner retained no interest in it. In contrast, in *Canel*, the court determined that property remitted to the State under the Act was "presumptively abandoned" and, therefore, the owner still retained ownership of the property. See *Canel*, 212 Ill. 2d at 331. Compare *Morris v. Chiang*, 163 Cal. App. 4th 753, 77 Cal. Rptr. 3d 799 (2008) (since title to property legitimately vested in the State under unclaimed property law, plaintiff was not entitled to the interest earned on it).

In any event, *Canel* does not require us to reach the same result with respect to interest income. See *Canel*, 212 Ill. 2d at 333 ("our opinion today is limited only to dividends accruing on stock held by the state under the Act"). As the court in *Canel* pointed out, "[t]he transformation of private property into public property on a bare assertion of authority is 'the very kind of thing that the Takings Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.' " *Canel*, 212 Ill. 2d at 332, quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164, 66 L. Ed. 2d 358, 367, 101 S. Ct. 446, 452 (1980). However, the court concluded by citing *Brown v. Legal Foundation*, 538 U.S. 216, 155 L. Ed. 2d 376, 123 S. Ct. 1406 (2003), for the proposition that not every taking by the government requires the payment of compensation.

In *Brown*, client funds that were anticipated to generate minimal interest were placed into special interest-bearing accounts. The interest was then used by the state to fund legal services. The court in *Canel* quoted the Supreme Court's explanation as to why it did not find a takings clause claim in that case as follows:

"  'To recapitulate: It is neither unethical nor illegal for lawyers to deposit their clients' funds in a single bank account. A state law that requires client funds that could not otherwise generate net earnings for the client to be deposited in an IOLTA account is not a "regulatory taking." A law that requires that the interest on those funds be transferred to a different owner for a legitimate public use, however, could be a *per se* taking requiring the payment of "just compensation" to the client. Because that compensation is measured by the owner's pecuniary loss—which is zero whenever the Washington law is obeyed—there has been no violation of the

*Treasurer*, 961 So. 2d 425 (La. App. 2007); *Sogg v. Ohio Department of Commerce*, No. 06AP-883 (Ohio App. June 21, 2007), *appeal allowed*, 116 Ohio St. 3d 1410, 876 N.E.2d 968 (2007); *Smyth v. Carter*, 845 N.E.2d 219 (Ind. App. 2006); *Clark v. Strayhorn*, 184 S.W.3d 906 (Tex. App. 2006).

Just Compensation Clause of the Fifth Amendment in this case.' " *Canel*, 212 Ill. 2d at 333, quoting *Brown*, 538 U.S. at 240, 155 L. Ed. 2d at 397, 123 S. Ct. at 1421.

The principle from *Brown* and recognized in *Canel* is that it is not what the state gained but what the property owner lost that determines whether a taking requiring compensation has occurred. Thus, while the retention of interest may be a "taking," the question is whether the named plaintiffs here have lost anything of value.

The amended complaint alleged as follows:

### *"Plaintiffs' Property*

28. In 1993, Atlantic Richfield Company delivered $280.50 in past dividends and shares of stock (later sold for $1,430.04) to the Treasurer as unclaimed property. Originally owned by Bert Golden, as of the transfer date this property belonged to Anita (Golden) White, as the sole heir to Bert Golden, who died intestate in 1988. While Defendants held Ms. White's property in custody, it accrued earnings.

29. On or about November 16, 2004, pursuant to a valid claim submitted, the Unclaimed Property Division of the Treasurer's Office returned the sum of $1,710.54 to Anita White. That amount represented only the principal sum that had been deposited with Defendants as unclaimed property and did not include any of the interest or other earnings that had accrued on that principal amount while Defendants held it in custody pursuant to the Act.

30. In or about December 1995, money belonging to the Estate of Genowefa Bogdanowicz was deposited with the Treasurer as unclaimed property. While Defendants held the estate's property in custody, it accrued earnings.

31. On June 26, 2000, pursuant to a claim submitted, the Unclaimed Property Division of the Treasurer's Office returned the sum of $45,555.11 to the Administrator of the Estate of Genowefa Bogdanowicz. That amount represented only the principal sum that had been deposited with Defendants as unclaimed property and did not include any of the interest or other earnings that had accrued on that principal amount while Defendants held it in custody pursuant to the Act." (Emphasis in original.)

Nowhere in the above allegations do the plaintiffs plead that their respective funds were earning interest at the time the State took custody of them. When questioned at oral argument, the attorneys for the parties acknowledged that they were unaware whether the plaintiffs' funds had been earning interest prior to the time they were placed in state custody.

■ Unlike the stock in *Canel*, which continued to produce dividends even though "neglected" by the owner, there is no evidence

that the plaintiffs' property in this case was producing any interest until the Treasurer took possession of it under the Act. While the State may have gained the interest income, the plaintiffs failed to plead that they were receiving interest or expected to receive interest on the funds remitted to the State under the Act. Simply put, the State's gain did not establish a loss on the part of the plaintiffs. As such, the plaintiffs have no claim for a taking for which compensation is due.

Based on the record before us, we answer both certified questions in the negative as they apply to this particular case.

## II. Rule 306 Appeal

■ The Treasurer contends that the circuit court abused its discretion when it certified the class in this case.

For class certification, the named representative must have a valid cause of action. *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 693, 862 N.E.2d 1091 (2007). As we have determined that the named plaintiffs do not have a claim for a taking for which compensation is due, they have no cause of action and may not seek relief on behalf of the other class members. *Arriola*, 323 Ill. App. 3d at 151. Therefore, the circuit court's order granting class certification is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Certified questions answered; cause reversed and remanded with directions.

WOLFSON and GARCIA, JJ., concur.