Docket No. 108313.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

DAVID CWIK, Successor Independent Adm'r of the Estate of Genowefa Bogdanowicz, *et al.*, Appellants, v. ALEXI GIANNOULIAS, Treasurer of the State of Illinois, *et al.,* Appellees.

*Opinion filed May 20, 2010.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

In this appeal, plaintiffs challenge the state's retention of interest earned on property held by the state pursuant to section 15 of the Uniform Disposition of Unclaimed Property Act (765 ILCS 1025/15 (West 2004)). In proceedings below, the circuit court of Cook County denied the defendants' motion to dismiss plaintiffs' amended complaint, which sought recovery of interest on plaintiff's property (money) previously held by the state under the Act; however, the circuit court certified dispositive questions to the appellate court pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). In the course of answering those questions, the appellate court ultimately determined that the retention of interest by the state "may" be a

"taking" under section 15 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §15) and the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV), but given the allegations in this case, the court concluded it is not a taking for which just compensation is due. 389 Ill. App. 3d 21. This appeal followed. 210 Ill. 2d Rs. 315, 317. For the reasons set forth hereafter, we affirm the judgment of the appellate court.

## STATUTE INVOLVED

The Uniform Disposition of Unclaimed Property Act (the Act) (765 ILCS 1025/1 *et seq.* (West 2004)) was enacted by our General Assembly in 1961. The Act creates a "presumption of abandonment" pertaining to various forms of neglected or unclaimed property held for the owners by, *inter alia*, financial organizations (765 ILCS 1025/2 (West 2004)), business associations (765 ILCS 1025/2a (West 2004)), insurance companies (765 ILCS 1025/3 (West 2004)), utilities (765 ILCS 1025/4 (West 2004)), and governmental entities or authorities (765 ILCS 1025/8, 8.1 (West 2004)), where the owners have failed to claim or otherwise indicate an interest in the property through statutorily specified acts for a period of time generally ranging from five to seven years, depending upon the applicable provision.

Pursuant to section 11(a) of the Act ((765 ILCS 1025/11(a) (West 2004)), a holder of "funds or other property, tangible or intangible, presumed abandoned under this Act, shall report and remit all abandoned property specified in the report to the State Treasurer." Section 11(b) specifies information that must be provided to the Treasurer, information that might help to identify or locate the owner and verify that the property does fall under the statutory presumption of abandonment. See 765 ILCS 1025/11(b) (West 2004). With that information, the state is required, by section 12 of the Act (765 ILCS 1025/12 (West 2004)), to attempt to notify the owner by publishing a notice in a newspaper of general circulation. The notice must list the last known addresses of persons listed in the report, describe the property in question, provide contact information concerning the holder of the property, and include a "statement that the abandoned property has been placed in the custody of the State Treasurer to whom all further claims must thereafter be directed." 765 ILCS 1025/12 (West 2004).

The Act provides that "[e]very person who has filed a report as provided by Section 11 shall deliver to the State Treasurer all abandoned property specified in the annual report on the same date that the annual report is filed." 765 ILCS 1025/13 (West 2004). "Upon the payment or delivery of abandoned property to the State Treasurer, the state shall assume custody and shall be responsible for the safekeeping thereof." 765 ILCS 1025/14 (West 2004). Significantly, for purposes of this appeal, the Act states:

> "When property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner." 765 ILCS 1025/15 (West 2004).

As to disposition of the "abandoned property," the Act, in its applicable 2004 form, provided:

> "All abandoned property, other than money and that property exempted by paragraphs (1), (2), and (3) of this subsection, delivered to the State Treasurer under this Act shall be sold within a reasonable time to the highest bidder at public sale ***. 765 ILCS 1025/17(a) (West 2004).

Section 18 of the Act stated that the "Treasurer shall retain all funds received under this Act, including the proceeds from the sale of abandoned property under section 17, in a trust fund ***." 765 ILCS 1025/18 (West 2004). Under the 2004 version of the Act, amounts in that trust fund in excess of $2.5 million were to be deposited in the State Pension Fund on dates certain twice annually. 765 ILCS 1025/18 (West 2004). Payment for claims allowed under the Act was to be paid out of the trust fund. 765 ILCS 1025/18 (West 2004).

## BACKGROUND

The plaintiffs, David Cwik, successor independent administrator of the estate of Genowefa Bodganowicz, and Anita White, filed a lawsuit against the defendants, Judy Barr Topinka,[1] Treasurer of the

---

[1] Alexi Giannoulias succeeded Judy Barr Topinka as Treasurer.

State of Illinois, and Alissa Camp,[2] director of the Unclaimed Property Division of the office of the Illinois Treasurer (collectively the Treasurer), on behalf of themselves and all others similarly situated, seeking payment of interest on their property–money in the case of each of the representative plaintiffs–held by the State of Illinois under the Act prior to their claims of reclamation. The plaintiffs also sought certification of the suit as a class action.

The circuit court denied the Treasurer's motion to dismiss the amended complaint, but certified two questions to the appellate court pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). Pursuant to Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)), the Treasurer also sought review of the circuit court's order certifying the class. The appellate court granted review in both instances and consolidated the appeals.

The questions certified for review were stated as follows:

"Whether the retention for state purposes of the interest earned on property held pursuant to the Illinois Uniform Disposition of Unclaimed Property Act during the time it was in the possession of the State Treasurer's Office and/or the State's Retirement Systems is a taking for which just compensation is due under the Fifth and Fourteenth Amendments to the United States Constitution or Article II, [*sic*] § 15, of the Illinois Constitution[.]

If so, whether just compensation should be measured by the interest earned by the State on the property taken[.]"

In addressing the certified questions, the appellate court observed that the majority of courts in other jurisdictions, considering a property owner's entitlement to *interest* under virtually identical statutes, have relied upon the United States Supreme Court's decision in *Texaco, Inc. v. Short*, 454 U.S. 516, 70 L. Ed. 2d 738, 102 S. Ct. 781 (1982), in concluding that "the retention of earned interest by a state under an unclaimed property statute is not a 'taking' requiring

---

[2]Joshua Joyce succeeded Alissa Camp as director of the Unclaimed Property Division.

the payment of compensation." 389 Ill. App. 3d at 29. The appellate court noted that the circumstances in *Texaco* were distinguishable insofar as the property in that case was considered *abandoned* under the applicable statute, whereas this court, in *Canel v. Topinka*, 212 Ill. 2d 311 (2004), adopted the view that, under Illinois' Disposition of Unclaimed Property Act, the state does not acquire title to the property in question, but merely holds the neglected property for the owner. 389 Ill. App. 3d at 28, citing *Canel*, 212 Ill. 2d at 331. Following a brief discussion of *Brown v. Legal Foundation*, 538 U.S. 216, 155 L. Ed. 2d 376, 123 S. Ct. 1406 (2003)–a case initiated by *vigilant* property owners who sought the interest on their funds held in lawyers' trust accounts–the appellate court concluded the initial portion of its analysis with this ambivalent statement: "Thus, while the retention of interest [in the case at bar] *may* be a 'taking,' the question is whether the named plaintiffs here have lost anything of value." (Emphasis added.) 389 Ill. App. 3d at 30-31.

In addressing that question, the appellate court observed: "Nowhere in the [plaintiffs'] allegations do the plaintiffs plead that their respective funds were earning interest at the time the State took custody of them. When questioned at oral argument, the attorneys for the parties acknowledged that they were unaware whether the plaintiffs' funds had been earning interest prior to the time they were placed in state custody." 389 Ill. App. 3d at 31. Assuming there had been a "taking" for purposes of our state and federal constitutions, the appellate court found the dearth of said allegations or claims dispositive on the question of just compensation:

> "Unlike the stock in *Canel,* which continued to produce dividends even though 'neglected' by the owner, there is no evidence that the plaintiffs' property in this case was producing any interest until the Treasurer took possession of it under the Act. While the State may have gained the interest income, the plaintiffs failed to plead that they were receiving interest or expected to receive interest on the funds remitted to the State under the Act. Simply put, the State's gain did not establish a loss on the part of the plaintiffs. As such, the plaintiffs have no claim for a taking for which compensation is due." 389 Ill. App. 3d at 31-32.

Applying that rationale, the appellate court answered both questions

"in the negative as they apply to this particular case." 389 Ill. App. 3d at 32. The court concluded: "As we have determined that the named plaintiffs do not have a claim for a taking for which compensation is due, they have no cause of action and may not seek relief on behalf of the other class members. [Citation.] Therefore, the circuit court's order granting class certification is reversed, and the cause remanded for further proceedings consistent with the views expressed in this opinion." 389 Ill. App. 3d at 32.

ANALYSIS

Plaintiffs raise numerous issues on appeal. We need address only one: "whether the defendants' retention of the interest accrued on unclaimed property pursuant to §15 of the Act is an unconstitutional taking of private property without compensation."

Statutes are presumed constitutional, and we have the duty to construe statutes so as to uphold their constitutionality if there is any reasonable way to do so. *O'Brien v. White*, 219 Ill. 2d 86, 98 (2006). The party challenging the validity of the statute has the burden of rebutting the presumption of constitutionality by clearly demonstrating a constitutional violation. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). The constitutionality of a statute is a question of law that is reviewed *de novo*. *O'Brien*, 219 Ill. 2d at 98.

We note at the outset that no interpretation of the statute itself is necessary. The language of the statute is plain; its meaning is clear. With two exceptions not applicable here (for "unliquidated stock and mutual funds"), the statute provides that the owner of property "paid or delivered to the State Treasurer" pursuant to the provisions of the Act "is not entitled to receive income" thereon. 765 ILCS 1025/15 (West 2004). Thus, the Act clearly divests the property owner of any right to interest earned on property held by the state pursuant to the authority of the Act. The question before us is whether the legislature can, without running afoul of our state and federal constitutions, enact a statute that divests neglectful proper owners of interest earned on their property while it is committed to the custody of the state for safekeeping. Applying the precedent and reasoning of the Supreme Court in *Texaco*, we hold that it can.

At issue in *Texaco* was an Indiana statute that automatically

divested the owner of a severed mineral interest of his or her right thereto–returning it to the surface owner–where the subsurface owner, for a period of 20 years, failed to use the interest or at least file a statement of claim with the local recorder of deeds. After examining its pertinent precedent, the Supreme Court rejected appellants' contention that the State of Indiana lacked "the power to provide that property rights of this character shall be extinguished if their owners do not take the affirmative action required by the State." Referring to that precedent, the Supreme Court noted:

> "In each case, the Court upheld the power of the State to condition retention of a property right upon the performance of an act within a limited period of time. In each instance, as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse." *Texaco*, 454 U.S. at 529, 70 L. Ed. 2d at 750-51, 102 S. Ct. at 792.

Having established that the states may enact statutes resulting in the lapse or divestment of a neglectful owner's rights in property, the Court went on to hold that the state was not required to pay compensation to such an owner:

> "In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. *** It is the owner's failure to make any use of the property–and not the action of the State–that causes the lapse of the property right; there is no 'taking' that requires compensation." *Texaco*, 454 U.S. at 530, 70 L. Ed. 2d at 751-52, 102 S. Ct. at 792-93.

The Court went on to address appellants' due process concerns, observing, first, that appellants, like all other citizens, "may be presumed to have had knowledge of the terms" of the Indiana statute. *Texaco*, 454 U.S. at 533, 70 L. Ed. 2d at 753, 102 S. Ct. at 794. See generally *People v. Lander*, 215 Ill. 2d 577, 588 (2005) ("It is well settled that all citizens are charged with knowledge of the law"). The Court pointed out that it was "essential to recognize the difference between the self-executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur."

*Texaco*, 454 U.S. at 533, 70 L. Ed. 2d at 753-54, 102 S. Ct. at 794. In that respect, the Supreme Court rejected appellants' reliance upon the seminal due process decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950) (establishing requirements of notice and an opportunity to present objections), concluding: "The reasoning in *Mullane* is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the Mineral Lapse Act. *** The Court in *Mullane* itself distinguished the situation in which a State enacted a general rule of law governing the abandonment of property." *Texaco*, 454 U.S. at 535, 70 L. Ed. 2d at 754, 102 S. Ct. at 795.

We find the reasoning of *Texaco* dispositive in the matter before us, for if a state legislature can constitutionally enact a statute that divests a neglectful owner of *all* rights in certain property absent the performance of specified activities evincing a continued and possessory interest in the property over the prescribed statutory period, then it logically follows that the legislature can, constitutionally, take the *less* drastic measure of enacting a statute that operates to divest those owners of only certain incidents of ownership, without mandating divestiture of all rights in the property. That is what the Illinois legislature has done here. As in *Texaco*, "[i]t is the owner's failure to make any use of the property–and not the action of the State–that causes the lapse of the property right; there is no 'taking' that requires compensation." *Texaco*, 454 U.S. at 530, 70 L. Ed. 2d at 752, 102 S. Ct. at 792-93. The fact that the Illinois legislature has taken a more benevolent attitude toward those who neglect their property than it might have does not render its enactment unconstitutional.

While the circumstances here might not qualify as "abandonment" under a common law definition, there appears to be no question, under *Texaco*, that the state could enact *statutory* provisions mandating the status of abandonment in appropriate circumstances or declaring the property interest lapsed *in toto*. Instead, using the phrase "presumed abandoned" sparingly, more commonly simply "abandoned," the legislature has effectively declared only an incident of ownership lapsed–the right to income earned–and has set up a system that at least allows errant property owners a reasonable period

of time in which to recover their tangible property, and an unlimited period in which to recover its monetary equivalent. Pursuant to this system–triggered at the outset by the owner's neglect rather than proactive state action aimed at seizing property from the vigilant–the Treasurer is to receive custody of the neglected property and then is required to assume, in apparent perpetuity, the responsibility of safekeeping the property, or the proceeds from the sale thereof, for any owners who may wish to reclaim their "abandoned" property. In return for this seemingly advantageous, long-term reclamation service, the state receives the benefit of retaining the interest earned from its management of the property after it is placed in state custody.

Quoting in part from the Seventh Circuit Court of Appeals' decision in *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999), this court, in *Canel*, described the state's role and attendant benefit under the Act as follows:

> " '[N]ot only does the state have free use of the property unless and until the owner reclaims it; the state is not required to (and Illinois does not) pay any interest to a reclaiming owner. [Citations.] In effect, the property is an interest-free loan to the state–in perpetuity if the owner never shows up to claim it.' *Vega*, 174 F.3d at 872.

> See also Note, *Virginia's Acquisition of Unclaimed and Abandoned Personal Property*, 27 Wm. & Mary L. Rev. 409, 419-20 (1986) (noting three dual policies of the uniform law including the protection of owners in order to reunite them with their property while providing adopting states with a method for raising revenue)." *Canel*, 212 Ill. 2d at 325.

In *Canel*, we held that the state did not have the right to dividends issued on plaintiff's shares of unliquidated stock while the stock was in the possession of the state. We reached that result after a thorough examination of the unique features of corporate ownership:

> "The shares of a corporation are the units into which the proprietary interests in a corporation are divided. 805 ILCS 5/1.80 (West 2000). The proprietary interests represented by the shares of stock consist of management or control rights, rights to earnings, and rights to assets. *Stroh v. Blackhawk Holding Corp.*, 48 Ill. 2d 471, 479 (1971); 11 Fletcher's

Cyclopedia of Private Corporations §5081 (rev. vol. 2003).

> Once a dividend is declared, it becomes a corporate debt owed to the shareholders in proportion to their shares in the corporation, and, if the corporation refuses to pay, the shareholders may sue to recover the unpaid dividend. 11 Fletcher's Cyclopedia of Private Corporations §5322 (rev. vol. 2003). A lawfully declared dividend is the separate property of the shareholders, wholly disconnected from their shares. *Ford v. Ford Manufacturing Co.*, 222 Ill. App. 76, 83 (1921). Stated simply, a dividend belongs to the owner of the shares. In this case that owner remained, at all times, the plaintiff, James Canel." *Canel*, 212 Ill. 2d at 323-24.

Given the attributes of stock ownership, and the circumstances of that case, we held that the dividends issued to Canel by the corporation while Canel's stock was in the custody of the state remained Canel's separate property and the state had no right to retain it. The retention thereof constituted a "taking" for which just compensation was due. We thus remanded the cause to the circuit court for a determination of just compensation. *Canel*, 212 Ill. 2d at 331-33.

However, we repeatedly and pointedly limited our analysis and holding to the retention of *dividends* by the state:

> "Because this case involves dividends accruing on unliquidated stock, we confine our analysis of section 15 to only dividends earned on shares of unliquidated stock held by the state pursuant to the Act." *Canel*, 212 Ill. 2d at 323.

> "We stress that our opinion today is limited only to dividends accruing on stock held by the state under the Act." *Canel*, 212 Ill. 2d at 333.

As our quotation of *Vega* suggested (see *Canel*, 212 Ill. 2d at 325), and our cautionary comments on the reach of the decision portended, we believe interest earned via state action on a corpus of money or other forms of property in the custody of the state can and should be treated differently from dividends automatically issued to the record holder of stock while the latter is in the state's possession prior to liquidation.

First, section 15 of the Act *specifies* different treatment for "income or other increments accruing *** on unliquidated stock and

mutual funds." 765 ILCS 1025/15 (West 2004). This legislative distinction recognizes–as did the limitation of our holding in *Canel*–the unique attributes and nature of those forms of corporate ownership and investment. Second, as our analysis in *Canel* acknowledges, dividends are separate property issued *to* the owner of stock, *as* the owner, irrespective of any action on his or her part. While stocks are in the Treasurer's custody, prior to liquidation, stocks remain the property of their owners, and any dividends issued are issued to them as owners of record–automatically. No action is required of either the owner or the state. The same is not true of interest earned on sums of money coming into the Treasurer's possession pursuant to the provisions of the Act. Without state action, the corpus earns nothing. Thus, there is a reasoned basis for treating dividends and interest differently.

We reiterate, pursuant to the holding in *Texaco*, the Illinois legislature has the authority–without violating our state or federal constitutions–to declare property statutorily "abandoned" where the owners have failed to show interest in the property through the performance of specified acts over a prescribed period of time. By such a declaration, our statute–self-executing as in *Texaco*–divests the owner of only certain incidents of ownership–unlike the Indiana statute at issue in *Texaco*–while the state provides safekeeping of the corpus and reclamation services. Our statute effects what may be described as limited lapse or divestment. There is no taking that would require compensation.

We emphasize that this situation differs from those extant in cases cited by plaintiffs in that this property was not wrested from a vigilant and reluctant property owner, who was actively involved with its oversight or management, and who disputed the appropriation at the time of the alleged taking.

We also note in passing plaintiffs' suggestion, in their reply brief, that application of the principles accepted in *Texaco* might result in a denial of due process in some case. Plaintiffs contend, "if the [third-party] holder is later determined to have turned the property over to the State by mistake" the Act "provides the owner with no mechanism to challenge the loss of his property right, nor does it require the State to prove the facts necessary to support the forfeiture." Plaintiffs do not argue that the third-party holders of *their* property turned it over

-11-

to the state by mistake, or that the facts would not support limited lapse of *their* property rights under the statute. Those observations, considered in conjunction with the *Texaco* Court's approval of the "self-executing" feature of the Indiana statute there at issue, suggest to us that plaintiffs lack standing to make that type of challenge to the statute. See *People v. Funches*, 212 Ill. 2d 334, 346 (2004) ("A party has standing to challenge the constitutionality of a statute only insofar as it adversely impacts his or her own rights"). Even if this were not the case, plaintiffs fail to address notification (765 ILCS 1025/12 (West 2004)), claims (765 ILCS 1025/19, 20 (West 2004)), and review (765 ILCS 1025/21 (West 2004)) provisions of the Act itself, and of the Code of Civil Procedure generally, to explain why those provisions are inadequate to provide procedural due process to those who fall within the purview of the Act. As our appellate court has aptly observed, a court of review is entitled to have the issues on appeal clearly defined with pertinent authority cited and reasoned, cohesive legal argument. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 208 (2007). An issue not clearly defined and sufficiently presented fails to satisfy the requirements of Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)).

For the foregoing reasons, given the facts of this case, we find that no "taking" occurred when the state retained interest earned on plaintiffs' property held in its custody pursuant to the provisions of the Act. In this respect, our holding is not entirely consistent with the analysis of the appellate court, which was ambivalent on that point. Nonetheless, we may affirm on any basis supported by the record (*People v. Durr*, 215 Ill. 2d 283, 296 (2005)), and we agree with the result reached by the appellate court. Thus, the judgment of the appellate court is affirmed.

*Affirmed.*