In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 12-3766

KATHERINE CERAJESKI, Guardian for Walter Cerajeski,

*Plaintiff-Appellant,*

*v.*

GREG ZOELLER, Attorney General of the State of Indiana,
  *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-1705-JMS-DKL — **Jane Magnus-Stinson**, *Judge.*

---

ARGUED SEPTEMBER 12, 2013 — DECIDED OCTOBER 31, 2013

---

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff appeals from the dismissal of her suit challenging the constitutionality of part of the Indiana Unclaimed Property Act, Ind. Code §§ 32-34-1-1 *et seq.* (Indiana's version of the Uniform Unclaimed Property Act), on the ground that it authorizes the state to confiscate private property without any compensation—let alone just compensation—to the owner.

The Act states that "property" is "presumed abandoned if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property" within a specified period that varies according to the type of property. § 32-34-1-20(c). When the presumption kicks in, the holder of the property (for example a bank, in the case of a bank account) is required to try to notify the owner and to submit within 60 to 120 days after that a detailed report of the matter (including the owner's last known address) to the state attorney general, and simultaneously with that submission to transfer the property to the attorney general. §§ 32-34-1-26(a), (b), (e); 32-34-1-27. By November 30 of the following year, assuming the owner hasn't tried to reclaim his property, the attorney general must attempt notice by publication. § 32-34-1-28. Notice is also posted on an official website, www.indianaunclaimed.gov (visited Oct. 29, 2013). The owner, by filing a valid claim to his property (which he can do on the website), can reclaim the property from the state at any time up to 25 years after it was delivered to the attorney general. § 32-34-1-36. At that point if still unclaimed it escheats to—that is, becomes owned by—the state.

But here's the rub that has given rise to this lawsuit: the owner who files a valid claim to property is entitled only to his principal, and not to any interest earned on it. The plaintiff contends that the state's retention of the interest is a taking that violates the takings (just-compensation) clause in the Constitution because the owner is paid nothing for his lost interest.

The plaintiff's ward had a small, interest-bearing account (it was either a savings account or a money market account)

in an Indiana bank. The value of a bank account is not property owned by the depositor; he is just a creditor of the bank. But the Indiana statute defines "property" very broadly, to include the value of a bank account, § 32-34-1-17(b), and with respect to such property the presumption of abandonment kicks in three years after the last communication, or indication of interest, by the owner regarding the account. § 32-34-1-20(c). That happened, in the case of Cerajeski's account, in 2006; we assume the reason for his failure to indicate any interest in the account for the required three years was related to whatever disability led to the appointment of a guardian for his affairs, but there is nothing in the record about this.

The statute requires individualized notice and reporting of a bank account after the three-year period elapses only if the value of the account exceeds $50. §§ 32-34-1-26(a), (e)(3). Cerajeski's account was smaller, but we haven't been told whether, before transferring it to the attorney general (required regardless of the account's size), the bank went through all the motions required by the Act for larger accounts anyway. Cerajeski's guardian didn't learn about the account until 2011.

Correctly believing that the state wouldn't pay interest if she filed a claim, she filed this lawsuit instead, seeking a declaration that she is entitled (on behalf of her ward) to the interest; if she obtains the declaration, the claim will follow.

The plaintiff does not quarrel with the aim and general structure of the Unclaimed Property Act. Unclaimed property, whether lost, mislaid, forgotten, or abandoned, is a drag on the economy. With no owner (abandoned property), or no known owner (lost or mislaid or forgotten property), a

property is unlikely to be put to its most productive use. One way to minimize the resulting loss of value is to vest ownership after some period of years—25 in Indiana—in the state; this is called escheat or *bona vacantia* (ownerless goods). See, e.g., *Texas v. New Jersey*, 379 U.S. 674, 675–77 (1965); *Standard Oil Co. v. New Jersey by Parsons*, 341 U.S. 428, 435–36 (1951). Another approach, also employed by Indiana, is for the state, after a much shorter period in which the owner of a property is unknown, to take custody of the property, try to find the owner, and if the owner shows up to claim it before enough time has elapsed for the property to escheat to the state, return the property to the owner. The goal of both procedures is to avoid so far as possible situations in which, for want of an identified owner, the value of property is not being maximized.

The state is certainly entitled to charge a fee for its services in taking custody of unclaimed property and trying to locate the owner. The statute, however, authorizes it to deduct from the value of the property only a very limited set of costs, see § 32-34-1-36(g), none of which appears to be relevant to Cerajeski's bank account. The uniform act on which the Indiana law is modeled allows for reasonable service charges and other fees for custodianship, Uniform Unclaimed Property Act of 1995 § 13(b), but for unexplained reasons Indiana has not enacted that section of the uniform act. And the state has made no effort to show that the amount of interest in Cerajeski's bank account bears any relation to the cost of the services that the state has performed in relation to the account.

The confiscation of the interest on Cerajeski's principal was therefore a taking of a part of his property (remember

that the Indiana statute makes a bank account "property" under Indiana law). Suppose Cerajeski had lost not a bank account but an apple orchard. Years later his guardian learns about the orchard, visits it, and discovers that a neighboring farmer has occupied the orchard for a number of years. The farmer acknowledges the guardian's right to the property, and leaves—thanking her profusely for the opportunity to gather and sell the apples that the orchard has produced all these years, but not compensating her for having appropriated them. She would be understandably indignant. He had converted property of hers—the apples. He would be entitled to a reasonable fee for having harvested and sold them rather than letting them rot, but not to keep the entire revenue from their sale. If you own an apple tree, you own the apples; and if you own a deposit account that pays interest, you own the interest, whether or not state law calls interest property. See *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235 (2003).

Even if by some magic the cost to the state of its custodianship of Cerajeski's bank account and related services equaled the confiscated interest, the confiscation would be a taking within the meaning of the takings clause. See *Koontz v. St. Johns River Water Management District*, 133 S. Ct. 2586, 2601 (2013), remarking that "we have repeatedly found takings where the government, by confiscating financial obligations, achieved a result that could have been obtained by imposing a tax. Most recently, in *Brown* [*v. Legal Foundation of Washington, supra*] we were unanimous in concluding that a State Supreme Court's seizure of the interest on client funds held in escrow was a taking despite the unquestionable constitutional propriety of a tax that would have raised exactly the same revenue. Our holding in *Brown* followed

from … two earlier cases in which we treated confiscations of money as takings despite their functional similarity to a tax."

Indiana could, after a reasonable time and satisfying due process, escheat the fruit, or the interest, without having to escheat the entire property as well. And it occurred to us after the oral argument that although the period of escheat in the Indiana statute is 25 years, the confiscation of interest after 3 years might be a partial escheat, though not called that. So we asked the parties to file supplemental briefs addressing two questions: whether the state's taking unconditional title to "presumed abandoned" property would be constitutionally valid as an escheat, and whether any issue concerning escheat had arisen in the course of the suit.

The state answered that without violating the takings clause, it can seize unconditional title to abandoned property without compensation, but that no issue concerning escheat has arisen in the present litigation because, as explained in the state's supplemental brief, the Unclaimed Property Act "is not, strictly speaking, an escheat statute. The state does not acquire title to unclaimed property, it acts as a custodian, and the owner may claim the property at any time." In support of this statement the state cites our decision in *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999), where we said that the unclaimed-property acts enacted by Illinois and other states, including acts based on the Uniform Unclaimed Property Act of 1995, as the Indiana act is, "are not escheat statutes. The state does not acquire title to the property. It is merely a custodian. The owner can reclaim his property at any time."

The state's answer to our question whether there is any issue of escheat in this case is correct, but fatal to its case. Begin with "abandoned." "Abandonment" in property law means voluntary relinquishment or renunciation of a property right, or an ownership vacuum resulting from the owner's death without heirs or a valid will. E.g., *Mucha v. King*, 792 F.2d 602, 610 (7th Cir. 1986); *Schaffner v. Benson*, 166 N.E. 881, 883 (Ind. App. 1929); *Haslem v. Lockwood*, 37 Conn. 500, 506–07 (1871); *Eads v. Brazelton*, 22 Ark. 499, 509 (1861); Note, "The Unclaimed Personal Property Problem: A Legislative Proposal," 19 *Stan. L. Rev.* 619, 620 (1967). It means that the owner gives up all claims to the property, thus pitching it back into the public domain, where it is available for reappropriation. *Of course* the state can take abandoned property without compensation—there is no owner to compensate. That is a clear example of escheat. (If the state lays no claim to abandoned property, the first person to claim it becomes the owner.) But *Mucha v. King*, *supra*, involved a painting that had disappeared for 60 years; yet it had not been abandoned, and we held that the owner's heir was entitled to its return.

Cerajeski did not voluntarily relinquish either the principal or the interest in his bank account. The fact that he has a guardian suggests that he is not competent to keep track of his property, though the record contains no details regarding his condition. The guardian was unaware of the account until years after it was transferred to the state. The account was unclaimed rather than abandoned. Unclaimed property, like abandoned property before someone appropriates it, is in a kind of limbo; and one way of moving it to economic heaven is escheat. See *United States v. Locke*, 471 U.S. 84, 100 (1985); cf. *Texaco, Inc. v. Short*, 454 U.S. 516, 525–26 (1982).

The Supreme Court of Illinois, interpreting its version of the Uniform Unclaimed Property Act, could be thought to have held, in an opinion on which the attorney general of Indiana mistakenly relies, that the Act authorizes the escheat of interest, though the court did not use the word "escheat." *Cwik v. Giannoulias*, 930 N.E.2d 990 (Ill. 2010). The attorney general has misread the case. The interest in question was interest the state had earned after taking custody of the plaintiff's property; the owner had not earned any interest on the property when it was in his custody. *Id.* at 993–94. To give the interest to the owner when he reclaimed the principal would therefore have given him a windfall. The court distinguished its earlier decision in *Canel v. Topinka*, 818 N.E.2d 311, 324–25 (Ill. 2004), which had held unequivocally that Illinois's version of the uniform act does not permit a taking of interest if, as in the present case, the owner's property was earning interest (or, equivalently, dividends) when the state took custody, and would have continued earning it had the state not taken custody. ("At all times the shares of stock remained the private property of plaintiff. Under the circumstances, the dividends, as an incident of ownership, were also private property." *Id.* at 325.)

The attorney general's reliance on *Cwik* is doubly odd, because he interprets his own state's version of the uniform act differently. He assures us that "the state will not take unconditional title, as opposed to custody, of unclaimed property." See also *Smyth v. Carter*, 845 N.E.2d 219, 222 (Ind. App. 2006). He tells us that Indiana law does not permit the state to escheat the Cerajeski account—which remember includes interest as well as principal—until 2031 (the state took custody of the account in 2006). That is why he rightly acknowledges that there is no issue of escheat in this litigation, that

the state is merely a custodian of the account. But if it is merely a custodian, on what basis can it confiscate a portion of the account? Interest on interest-bearing unclaimed property is unclaimed property too, and so the property owner can claim it upon proving title, unless the property has been escheated; and the state assures us that it has not been escheated because the law under which it was taken by the state—the Unclaimed Property Act—is not an escheat statute, or more precisely not an escheat statute except with regard to property unclaimed after 25 years.

There is no basis for the state's confiscating the interest in Cerajeski's account. See *Sogg v. Zurz*, 905 N.E.2d 187, 192 (Ohio 2009). There is no articulated basis for fixing a 25-year term for escheat of principal and only 3 years for escheat of interest—a period so short as to present a serious question whether it is consistent with the requirement in the Fourteenth Amendment that property not be taken without due process of law, implying adequate notice and opportunity to contest. And "at least as to confiscatory regulations (as opposed to those regulating the use of property), a State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law." *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 167 (1998); see also *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980); *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1199–1200 (9th Cir. 1998); cf. *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 130 S. Ct. 2592, 2611–12 (2010). A state may not "transform private property into public property without compensation" merely "because it is held temporarily by the [state]." *Webb's Fabulous Pharmacies, Inc. v. Beckwith, supra*, 449 U.S. at 164. "In *Phillips*, the Supreme Court reaffirmed its

commitment to the 'interest follows principal' rule as a con-stitutionally relevant aspect of Takings Clause jurispru-dence." *Schneider v. California Department of Corrections, supra,* 151 F.3d at 1199. And a state may not escheat property with-out a judicial or administrative determination that the prop-erty has been abandoned or is otherwise subject to escheat. E.g., *Connecticut Mutual Life Ins. Co. v. Moore,* 333 U.S. 541, 546–47 (1948); *Anderson National Bank v. Luckett,* 321 U.S. 233, 241–42, 245–46 (1944); *State v. Otis Elevator Co.,* 95 A.2d 715, 720, 723–24 (N.J. 1953).

Everything required for an escheat is missing in this case.

We think we know what has led the state into error. It is its misunderstanding of the concept of abandonment, a mis-understanding fostered by the misleading term "presumed abandoned" in the Unclaimed Property Act. Abandonment of property other than as a consequence of death without a valid will or heirs means at common law a voluntary relin-quishment of ownership. If there is no owner, there is no one to object to the state's taking the property without compen-sation (there is no one to compensate). Now it is true that a state's power of escheat is not limited to abandoned proper-ty in the common law sense. The state can "condition the permanent retention of [a] property right on the perfor-mance of reasonable conditions that indicate a present inten-tion to retain the interest," *Texaco, Inc. v. Short, supra,* 454 U.S. at 526—and so the fact that "abandoned" in the Indiana statute does not mean "abandoned" in the common law sense, but instead means abandoned or unclaimed, does not necessarily limit the state's power to escheat the property. And in fact Indiana *does* escheat some property that is mere-ly unclaimed and not abandoned—but only after 25 years of

its remaining unclaimed. Until then, Indiana law gives the state no authority to escheat property. And so if before then the state takes either principal or interest it must render just compensation to the owner if as in this case the owner's identity is known. The state can charge a fee for custodianship and for searching for the owner, but the interest on the principal in a bank account is not a fee for those services.

The perversity of the state's position lies in the fact that unclaimed property acts are primarily designed not to enrich the state directly but to "return[] the unclaimed property to the stream of commerce," *Louisiana Health Service & Indemnity Co. v. Tarver*, 635 So.2d 1090, 1092 (La. 1994), and to protect property owners against what's known as "lucrative silence." "[A] holding institution [such as a bank] for intangible personal property [such as a bank account] can find doing nothing with its customers' property and communicating as little as possible with its customers to be 'lucrative silence.'" Unclaimed Property Act Summary, *Uniform Law Commission*, uniformlaws.org/ActSummary.aspx?title= Unclaimed%20Property%20Act (visited Oct. 29, 2013). "The practical reason behind the states' action [in enforcing unclaimed property laws] is to prevent unclaimed personal property being eventually appropriated by the present holder," though realism requires recognition that unclaimed property statutes "are also a means of raising [state] revenue." *Treasurer of New Jersey v. U.S. Department of Treasury*, 684 F.3d 382, 390 (3d Cir. 2012), quoting John Orth, "Escheat: Is the State the Last Heir?," 13 *Green Bag 2d* 73, 78–79 (2009).

A holder of someone else's property may be tempted to try to reap the fruits of the property if the owner is inattentive to it or perhaps (as is probably true in this case—why

else the guardianship?) incapable of keeping track of it. We're surprised that the attorney general of Indiana wants to take those fruits from someone who may be incompetent to safeguard his property.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion. The plaintiff is entitled to just compensation from the state when she files her claim to Cerajeski's account, but the amount of that just compensation has yet to be determined. The plaintiff has also sought an injunction—why we don't know; and injunctive relief may well be unavailable in this case. "Equitable relief is not available to enjoin an alleged taking of private property for a public use." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984). The availability and propriety of injunctive relief are other issues to be resolved by the district judge in the first instance.

REVERSED AND REMANDED.