In the

# United States Court of Appeals

### For the Seventh Circuit

No. 24-1025

ALEXANDER CARTER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

COOK COUNTY SHERIFF and COOK COUNTY, ILLINOIS,

*Defendants-Appellees*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-cv-01893 — **Jeremy C. Daniel**, *Judge*.

ARGUED SEPTEMBER 11, 2024 — DECIDED JULY 3, 2025

Before SYKES, *Chief Judge*, and BRENNAN and PRYOR, *Circuit Judges*.

PRYOR, *Circuit Judge*. Invoking 42 U.S.C. § 1983, a group of nine named plaintiffs led by Alexander Carter filed a putative class action suit against the Cook County Sheriff. They sought damages for constitutional violations stemming from a policy at the Cook County Jail of destroying an inmate's government-issued identification card if left unclaimed in jail storage after the inmate is transferred out of the Cook County Jail to

the Illinois Department of Corrections (IDOC). The plaintiffs argued that this policy, under which they were given a limited window of time to arrange for the recovery of their government-issued identification cards, violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution. The district court granted the Sheriff's motion to dismiss, finding each claim foreclosed by precedent. We affirm.

## I.   BACKGROUND

### A.  Factual Background

We review de novo a district court's dismissal of a complaint for failure to state a claim, accepting all well-pleaded factual allegations as true and making all reasonable inferences in the plaintiffs' favor. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019).

When a person is arrested and detained at the Cook County Jail, the Sheriff seizes and inventories the detainees' property and categorizes the items as either "compliant" or "non-compliant." Compliant property includes clothing, keys, credit cards, and government-issued identification cards. Under direction of the Sheriff, the jail stores all compliant property until the owner is either released or transferred to the IDOC.

When a person is transferred from the Cook County Jail to the IDOC, the inmate must complete a "Shipment Donation/Designator Form," which contains the jail's designate-or-destroy policy. The top of the form states:

> You are being shipped to the Illinois Department of Corrections or to another facility and cannot take any of the items above with you. You have two choices. You can donate the items

or designate someone to pick them up. Below are two sections, Donation Authorization and Authorization for Property Pickup. DO NOT FILL OUT BOTH SECTIONS.

The form explains how a designated third party can retrieve a detainee's property. Towards the bottom, the form warns:

If the property is NOT picked up within 45 days of the date of this letter, it will be removed from storage and disposed of accordingly.[1]

Each of the nine named plaintiffs—Alexander Carter, Lamarcus Cargill, Jimmy D. Hitchcock, Dashaun Riley, Arland Scott, Charles Smith, Eugene Washington, Amy Won, and Deshawn Wright—was at one point arrested and detained at the Cook County Jail. During the booking process, the jail inventoried the arrestees' personal property, which included government-issued identification cards. Between January 2019 and March 2021, each plaintiff was transferred from the county jail to IDOC. The Sheriff did not, however, ship the plaintiffs' identification cards with them to the IDOC. Instead of forwarding the property to IDOC, the Sheriff applied its designate-or-destroy policy to eventually destroy each plaintiff's government-issued identification cards.

---

[1] The plaintiffs did not include this form in their complaint, but they did attach it to their response to the defendants' motion to dismiss. We may consider the form because its purpose was to illustrate the facts the plaintiffs expected to prove. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). We note also that the form itself describes a 45-day property recovery window, but the complaint recites a 60-day window. This typographical error does not affect our analysis.

### B. Procedural History

On April 12, 2022, Carter filed a § 1983 class action complaint against the Sheriff, challenging the Sheriff's designate-or-destroy policy as unconstitutional.[2] Carter added the additional named plaintiffs in an amended complaint filed on November 8, 2022. From here, we refer to the plaintiffs collectively as "Carter."

Carter argued that the designate-or-destroy policy violated the Fourth Amendment's prohibition on unreasonable seizures, the Fifth Amendment's Takings Clause, and both the substantive and procedural components of the Fourteenth Amendment's Due Process Clause. The Sheriff moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Sheriff argued that all of Carter's claims were foreclosed by this Court's precedent, and that Carter had not plausibly pleaded facts that show otherwise. Carter conceded that our decision in *Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003), foreclosed his Fourth Amendment claim, but preserved the topic for appeal in the hopes of persuading us to reconsider *Lee* in light of more recent Supreme Court precedent.

The district court granted the motion to dismiss on all claims. The court accepted Carter's concession as to the Fourth Amendment claim and held that Carter's other claims were indistinguishable from the Fifth and Fourteenth

---

[2] The complaint also named Cook County as a necessary party. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity."); FED. R. CIV. P. 17, 19.

Amendment constitutional arguments we rejected in two closely analogous cases: *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2021), and *Kelley-Lomax v. City of Chicago*, 49 F.4th 1124 (7th Cir. 2022).

Carter appeals, renewing his Fourth, Fifth, and Fourteenth Amendment substantive due process claims. He does not appeal the Fourteenth Amendment procedural due process claim.

## II.   DISCUSSION

We analyze Carter's Fourth, Fifth, and Fourteenth Amendment arguments in turn.

### A.  Fourth Amendment

The Fourth Amendment protects against "unreasonable searches and seizures" of property. U.S. CONST. amend. IV. It is "well settled," however, that the government may constitutionally "seize and inventory … [an individual's] property upon arrest." *Conyers*, 10 F.4th at 706 (citing *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983) (seizure of property found on an individual at the time of arrest is "reasonable" under the Fourth Amendment). In line with this principle, Carter cannot and does not challenge the constitutionality of the Sheriff's initial seizure of his government-issued identification cards.

Instead, Carter alleges that the Sheriff's policy of maintaining possession of an inmate's government-issued identification card, even after transferring the inmate to the IDOC, independently violates the Fourth Amendment—even if the initial seizure of the property was lawful. This argument, as Carter concedes, runs headlong into our precedent rejecting the notion that a plaintiff may challenge a "continuing seizure" of lawfully seized property under the Fourth

Amendment. *Lee*, 330 F.3d at 466 (holding that the Fourth Amendment "cannot be invoked by the dispossessed owner to regain his [lawfully seized] property."); *see also Wilkins v. May*, 872 F.2d 190, 193–95 (7th Cir. 1989) (rejecting Fourth Amendment "continuing seizure" theory as applied to persons whose detention was alleged to be unlawfully prolonged). Carter urges us to reconsider *Lee* in light of three recent Supreme Court cases.

First, Carter argues that *Lee* did not engage in a proper historical analysis of the Fourth Amendment, which he contends is required by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *Bruen* is a Second Amendment case in which the Supreme Court explained that courts may only uphold a challenged firearm regulation once the government justifies it "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. But *Bruen* had nothing new to say about the Fourth Amendment. Although the Court commented that its historical focus "comports with how we assess many other constitutional claims," *id.* at 25, including Fourth Amendment claims, *id.* at 37, nowhere within *Bruen* did the Court suggest that existing Fourth Amendment cases like *Lee* were erroneously decided. We decline to stretch the "general language" in *Bruen* so dramatically beyond its context to "quite different circumstances that the Court was not then considering." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023) (quoting *Illinois v. Lidster*, 540 U.S. 419, 424 (2004)). Besides, we *did* engage in a historical analysis of the Fourth Amendment in *Lee*, but we concluded that the "text, history, and judicial interpretations" of the Fourth Amendment did not support a

"continuing seizure" theory. *Lee*, 330 F.3d at 461–64; *see also Wilkins*, 872 F.2d at 193–94.[3] *Bruen* does not help Carter.

Carter's second Supreme Court case is *Manuel v. City of Joliet*, 580 U.S. 357 (2017). In *Manuel*, the Supreme Court held that a man who spent weeks in pretrial detention based on false statements by the arresting officer could challenge his continued detention as an unreasonable seizure under the Fourth Amendment. 580 U.S. at 369–70. Carter argues that *Manuel* counsels a second look at our rejection of a Fourth Amendment "continuing seizure" theory in *Lee*. But we rejected this very argument in *Conyers*.[4] 10 F.4th at 706, 710. We explained that *Manuel* was unhelpful for two reasons:

> First, *Manuel* dealt with pretrial confinement, not the retention of property. More importantly,

---

[3] Carter offers a somewhat scattered historical analysis of his own, citing a scholarly article explaining that warrants for the seizure of property must specify the items to be seized so that a person can "know and understand what property was taken" and can have the power to "get it back." Laurent Sacharoff, *The Fourth Amendment Inventory As A Check on Digital Searches*, 105 IOWA L. REV. 1643, 1671 (2020). He also cites a Vermont Supreme Court case and an Iowa Supreme Court case for the general proposition that a "temporary bailee" of property must take care of that property and return it upon request. *Crawford v. Newell*, 23 Iowa 453, 455 (1867); *Tinker v. Morrill*, 39 Vt. 477, 479 (1866). Carter does not explain why or how any of these sources map onto the context here or why they should lead us to overrule *Lee*. Indeed, Carter's complaint explains that the Sheriff "safely secures [a detainee's] property while the detainee remains in the Sheriff's custody," until the recovery window expires.

[4] The facts in *Conyers* concerned a very similar property retrieval policy pursuant to which arrestees transferred from the custody of the Chicago Police Department to the Cook County Jail had 30 days to arrange for the recovery of their property. 10 F.4th at 706–08.

> even if we were to equate persons and property for these purposes, it would not help our plaintiffs. *Manuel* was about a defendant's ability to show that a finding of probable cause—necessary to support the detention—was based upon fabricated evidence. In other words, were the seizure and detention flawed from the outset? No such question arose in *Lee*, and no such question exists in our case.

*Id.* at 710 (citation omitted). This explanation in *Conyers* for why the Supreme Court's decision in *Manuel* does not undercut *Lee* stands true today.

Still seeking to have us reject *Lee*, Carter points to a third Supreme Court case, *Thompson v. Clark*, 596 U.S. 36 (2022), which was published after *Conyers*. *Thompson* dealt with one of the necessary elements of a Fourth Amendment claim under § 1983 for malicious prosecution—a favorable termination of the underlying criminal case. 596 U.S. at 44. The Court explained that the favorable termination requirement could be satisfied by showing that "the criminal prosecution ended without a conviction," rather than "some affirmative indication of innocence." *Id.* at 49.

Carter argues that *Thompson* somehow demonstrates that our analysis of *Manuel* in *Conyers* was incorrect. But we disagree. *Thompson* concerned the narrow question of what constitutes a "favorable termination" for purposes of a malicious prosecution claim. It did not address whether a county jail's continued seizure of property could form the basis of a cognizable Fourth Amendment claim. To the extent that Carter argues that a malicious prosecution claim extends the Fourth Amendment's coverage beyond the initial seizure, we do not

read *Thompson* to stand for that proposition. As the Court explained, when examining a malicious prosecution claim, the relevant question is whether the Fourth Amendment's probable-cause requirement has been met at the outset. *Id.* at 42 (citing *Manuel*, 580 U.S. at 363–64, 367–68); *see also Conyers*, 10 F.4th at 710. We see nothing in *Thompson* that would disturb *Lee*.[5]

Because Carter's arguments have not persuaded us to reconsider *Lee*, we conclude that the district court correctly dismissed Carter's Fourth Amendment claim.

## B. Fifth Amendment

We next address Carter's argument that the destruction of his government-issued identification cards constituted a "taking" within the meaning of the Fifth Amendment. The Takings Clause of the Fifth Amendment protects against government takings of private property "for public use, without just compensation." U.S. CONST. amend. V.

"A person who asserts a Takings Clause claim must show several things: (1) that the governmental entity took his property, either through a physical taking, or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal)

---

[5] Indeed, we reaffirmed *Conyers*'s treatment of *Manuel* in *Kelley-Lomax*, which was published after *Thompson* and concerned the exact same property retrieval policy at issue in *Conyers*. *Kelley-Lomax*, 49 F.4th at 1125 ("The Fourth Amendment is satisfied if the seizure is reasonable when it occurs—as seizure of an arrestee's property is.").

was taken, the government has not paid just compensation." *Conyers*, 10 F.4th at 710–11 (internal citations omitted).

"[P]roperty rights protected by the Takings Clause are creatures of state law." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 155 (2021). We assume for purposes of this appeal that inmates have a general property interest in their government-issued identification cards and that the government took this property for a public use without compensating the inmates. *Kelley-Lomax*, 49 F.4th at 1125; *Conyers*, 10 F.4th at 711. But because the government can take abandoned property without compensation, "the key question [in this appeal] is whether [the Sheriff] was entitled to treat [Carter's] property as abandoned—that is, intentionally relinquished—when [Carter] failed to follow the reclamation procedures the [Sheriff] offered." *Conyers*, 10 F.4th at 711.

Analyzing the City of Chicago's similar property destruction policy, we explained in *Conyers* that the question of abandonment turned on whether a detainee had adequate notice of the jail's policy and an opportunity to take advantage of it. *Id.* at 711–13 (acknowledging that Fifth Amendment takings analysis was "intertwined" with due process inquiry). We found abandonment—and therefore no valid Fifth Amendment takings claim—for three reasons:

> First, the detainee knows exactly what has been taken from him and when that confiscation occurred. Second, the detainee is told both how (either personally or through a representative) to get his property back and how quickly he must do so. Finally, the hard-copy [n]otice plainly states that '[i]f you do not contact the [Chicago Police Department] to get your

> property back within 30 days of the date on this
> receipt, it will be considered abandoned....'

*Id.* at 712 (emphasis omitted). These features of the contested policy were "plain enough to entitle the [government] to treat as abandoned any property that remains unclaimed after 30 days have gone by." *Id.* Since "genuinely abandoned property does not belong to anyone," we reasoned, "the [government] may dispose of it as it sees fit." *Id.* (citing *Cerajeski v. Zoeller*, 735 F.3d 577, 581 (7th Cir. 2013)). With no due process violation, the plaintiffs' takings theory also failed. *Id.* at 715.

As the Sheriff argues here, the parallels between this case and *Conyers* are hard to ignore. Here, as in *Conyers*, Carter was provided with a written notice clearly outlining how to retrieve his property. Yet, like in *Conyers*, Carter has failed to demonstrate that he could not avail himself of the property retrieval procedure, or that he even tried. *See id.* at 714–15. Carter does not allege that he was unfamiliar with the Sheriff's designate-or-destroy policy, that it was unfair, or that it was too difficult to follow. Nor does he allege that he ever designated a proxy to retrieve his government-issued identification card (or that he had no one to designate in the first place). We see no daylight between *Conyers* and the facts here, and therefore conclude that the Sheriff was "entitled to treat [Carter's] property as abandoned." *Id.* at 711.

Carter seems to recognize this reality and now argues that the Supreme Court's decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), upended *Conyers* and requires a finding that Carter did not abandon his government identification card when transferred to the IDOC. But the Supreme Court's decision in *Tyler* also does not help Carter.

*Tyler* involved a homeowner, Tyler, whose home was sold by Hennepin County, Minnesota, after she failed to pay property taxes for many years. 598 U.S. at 635. The County paid itself back taxes from the proceeds of the forced sale and kept an additional $25,000 in surplus money from the sale. *Id.* Tyler sued, arguing that keeping the surplus constituted a Fifth Amendment "taking." *Id.* at 635–36. The County countered that there was no taking because Tyler had constructively abandoned her property—and therefore any surplus from a forced sale—by failing to pay taxes. *Id.* at 646. The Supreme Court sided with Tyler finding she had plausibly alleged the State had taken the surplus in her home without due process of law. *Id.* at 643–47.

Addressing the defendant's abandonment argument, the Court reasoned that the County could not deem Tyler's home abandoned simply because she had failed to pay taxes. *Id.* at 647. "Abandonment requires the 'surrender or relinquishment or disclaimer of' all rights in the property." *Id.* at 646 (quoting *Rowe v. Minneapolis*, 49 Minn. 148 (1892)). The Court explained that "[i]t is the owner's failure to make *any* use of the property" that causes a property interest to be relinquished. *Id.* at 647. The Supreme Court reasoned that the County could not rely on Minnesota's forfeiture scheme because it did not address abandonment at all. Without a procedure to determine the delinquent taxpayer's use of the property or her intention to relinquish her property rights, the Supreme Court found the County's constructive abandonment argument failed. *Id.*

Carter argues that *Tyler* is analogous to this case because he, like Tyler, did not intend to abandon his property. He contends that our inference of abandonment in *Conyers*, which we

drew from the inmate's failure to follow a transparent and ac-
cessible property retrieval procedure, was erroneous because
our focus on process did not account for whether the inmate
"voluntarily relinquish[ed]" their property.

The Supreme Court in *Tyler* explained that the govern-
ment "has the power to condition the permanent retention of
[a] property right on the performance of reasonable condi-
tions that indicate a *present intention to retain the interest*." 598
U.S. at 646 (modification in original) (quoting *Texaco, Inc. v.
Short*, 454 U.S. 516, 526 (1982)).[6] The Court distinguished the
facts in *Tyler* from *Nelson v. City of New York*, 352 U.S. 103, 110
(1956), in which property owners were deemed to have for-
feited the surplus from a foreclosure sale of property after fail-
ing to follow the city ordinance for claiming the surplus. *See
Tyler*, 598 U.S. at 643–44 (discussing *Nelson*). Because the New
York City ordinance provided a procedure for owners to ex-
press continued interest in retaining their property and recov-
ering the surplus from any tax sale, the Supreme Court found
no Takings Clause violation. *Id.* at 643–44 (citing *Nelson*, 352
U.S. at 110).

In this case, the Cook County Jail provides an inmate,
whose property has been seized, an opportunity to reclaim his
property before the jail considers it abandoned or intention-
ally relinquished. The inmate is required to fill out a form des-
ignating a third party to retrieve his property. Such a policy,
if somewhat tedious, provides sufficient process to determine
if the inmate intends to abandon his property for purposes of

---

[6] In *Texaco*, property owners were deemed to have abandoned mineral
rights after failing to use property and fill out paperwork indicating that
they still claimed ownership over the rights. *Texaco*, 454 U.S. at 526.

the Fifth Amendment. Because this procedure was "plain," and because Carter did not allege that he even attempted to follow it or that doing so would have been futile, we follow *Conyers* in concluding that Carter abandoned his government-issued identification, and any Fifth Amendment takings claim along with it. *Conyers*, 10 F.4th at 712.

### C. Fourteenth Amendment

Finally, we turn to Carter's substantive due process argument. The Fourteenth Amendment's Due Process Clause protects against the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Clause has both a procedural and substantive component. *Lukaszczyk v. Cook County*, 47 F.4th 587, 599 (7th Cir. 2022). When a plaintiff challenges a government policy on substantive due process grounds, the threshold question is whether the challenged policy infringes upon a "fundamental right or liberty." *Id.* at 599–600. Fundamental rights have "deep roots in our history and traditions," *Kelley-Lomax*, 49 F.4th at 1125, so deep that they are "implicit in the concept of ordered liberty," *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citation omitted).

Government actions infringing on fundamental rights receive heightened scrutiny. *Lukaszczyk*, 47 F.4th at 599–600. But if a fundamental right is in not in play, we apply rational-basis review, which is highly deferential to the government. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013). If "some rational basis exists" upon which the challenged policy could be based, it survives rational-basis review, regardless of "whether the reasons given actually motivated" the policymakers. *Id.*

By arguing that the Sheriff's designate-or-destroy policy lacks a rational basis, Carter correctly concedes that rational-basis review applies. In *Kelley-Lomax*, we explained that "property is a fundamental right," but that "pointing to the fundamental status of 'property' in the abstract" is not enough to warrant heightened scrutiny. 49 F.4th at 1125. Instead, a plaintiff must show that the "actual policy at stake"— here, the Sheriff's unwillingness to forward government-issued identification from the Cook County Jail to IDOC— "has historical provenance." *Id.* Carter has not made that showing, so rational-basis review applies.

As explained in *Lee v. City of Chicago*, this leads to another hurdle:

> When a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in … rational-basis review.

330 F.3d at 467 (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323–26 (7th Cir.1996)). As discussed above, Carter has abandoned his property by not following the procedures for its return. While Carter alleges that the Sheriff's designate-or-destroy policy violates Illinois law, he has not alleged the inadequacy of Illinois remedies or even the inadequacy of the Sheriff's own property recovery procedures. And given that his Fourth and Fifth Amendment claims are foreclosed by *Lee* and *Conyers*, Carter has not established an independent constitutional violation. Following *Lee*, we will therefore not engage in rational-basis review. Carter's Fourteenth Amendment substantive due process claim thus must fail.

### III.    Conclusion

For the foregoing reasons, we Affirm.